MDR

**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salam Alkhafaji, | No. CV 11-741-PHX-DGC (MEA) |
| Plaintiff, | **ORDER** |
| vs. | |
| County of Maricopa, et al., | |
| Defendants. | |

## I.     Procedural History

On April 14, 2011, Plaintiff Salam Alkhafaji, who is confined in the Arizona State Prison Complex-Lewis in Buckeye, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*.  In an August 11, 2011 Order, the Court granted Plaintiff permission to proceed *in forma pauperis* and dismissed the Complaint because Plaintiff had failed to state a claim upon which relief could be granted. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order and warned Plaintiff that the Court would dismiss the action without further notice if Plaintiff failed to timely comply with the Order.

Plaintiff did not file an amended complaint.  Therefore, on September 27, 2011, the Clerk of Court entered Judgment.  On December 30, 2011, Plaintiff filed a Request for Reconsideration.   In a February 14, 2012 Order, the Court granted the Request for Reconsideration, vacated the Judgment, reopened the case, and gave Plaintiff 30 days to file

TERMPSREF

1  an amended complaint.  On March 8, 2012, Plaintiff filed his First Amended Complaint
2  (Doc. 19).

3  **II.    Statutory Screening of Prisoner Complaints**

4      The Court is required to screen complaints brought by prisoners seeking relief against
5  a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.
6  § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised
7  claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
8  be granted, or that seek monetary relief from a defendant who is immune from such relief.
9  28 U.S.C. § 1915A(b)(1), (2).

10     A pleading must contain a "short and plain statement of the claim *showing* that the
11  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not
12  demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
13  unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
14  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
15  statements, do not suffice."  Id.

16     "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
17  claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly,
18  550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content
19  that allows the court to draw the reasonable inference that the defendant is liable for the
20  misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for
21  relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
22  experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual
23  allegations may be consistent with a constitutional claim, a court must assess whether there
24  are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

25     As the United States Court of Appeals for the Ninth Circuit has instructed, however,
26  courts must "continue to construe *pro se* filings liberally."  Hebbe v. Pliler, 627 F.3d 338,
27  342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

28

1   standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551

2   U.S. 89, 94 (2007) (*per curiam*)).

3   **III.    First Amended Complaint**

4          An amended complaint supersedes the original Complaint.  Ferdik v. Bonzelet, 963

5   F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542,

6   1546 (9th Cir. 1990).   After amendment, the Court treats the original Complaint as

7   nonexistent.  Ferdik, 963 F.2d at 1262.  Thus, the Court will consider only those claims

8   raised in the First Amended Complaint against only those Defendants named in the First

9   Amended Complaint.

10         In his three-count First Amended Complaint, Plaintiff sues the following Defendants:

11  Maricopa County Sheriff Joseph Arpaio; Correctional Officers G. Bush and Rain;

12  Correctional Officer Sergeants Roger, Chris, Oddly, and Straight; and Doctors D. Spiritu, P.

13  Drapeau, and Humis.

14         In Count One, Plaintiff alleges that he was subjected to excessive force while a

15  pretrial detainee, in violation of his due process rights.  Specifically, he states that on

16  December 30, 2008, he was suffering an incapacitating asthma attack and Defendant Drapeau

17  came into Plaintiff's cell, evaluated Plaintiff's condition, and determined that Plaintiff was

18  malingering.  Plaintiff claims that Defendant Drapeau became irate, made racial and profane

19  remarks to Plaintiff, and then directed Defendants Bush, Rain, Roger, and Humis to place

20  Plaintiff in hand and leg restraints.  Plaintiff alleges that he was unable to "voice concern, or

21  respond" because he was suffering from an asthma attack.

22         Plaintiff asserts that Defendant Drapeau yelled at Plaintiff and ordered him to stand

23  up and, when Plaintiff failed to respond, directed Defendants Bush, Rain, Roger, and Humis

24  to force Plaintiff to comply.  Plaintiff contends that Defendants Rain and Humis grabbed

25  Plaintiff by the ears, lifted Plaintiff several feet off the floor, and, when Plaintiff still was

26  unable to comply with orders to stand up, began beating and kicking Plaintiff for several

27  minutes.  Plaintiff claims that he offered no resistance and posed no threat to the officers.

28

Plaintiff alleges that Defendants Bush and Roger witnessed the incident, but, at Defendant Drapeau's direction, made no attempt to intervene or protect Plaintiff.  Plaintiff contends that Defendants Bush and Roger took Plaintiff from his cell and carried Plaintiff by the hand and leg restraints to a disciplinary isolation cell.  Plaintiff claims that Defendants Bush, Rain, Roger, and Humis stripped Plaintiff; shackled him into a metal, four-point restraint bed, and left Plaintiff there for more than forty-eight hours.  Plaintiff claims that during the time he was restrained, he was forced to urinate and defecate on himself and was not provided any medical care for his injuries.  Plaintiff alleges that he has suffered serious, irreversible injuries, including paralysis.

In Count Two, Plaintiff contends he was denied medical care in violation of his Eighth Amendments rights and the Americans with Disabilities Act (ADA).  Plaintiff alleges that he made numerous requests to Defendants Drapeau, Spiritu, Roger, Chris, Oddly, and Straight for medical care for injuries suffered from the alleged assault described in Count One and for sores and infections caused by being placed in the four-point restraint and his "diminished physical capacity."  He claims that nonparty Maricopa County Health Services failed or refused to provide for his medical needs.  Plaintiff claims that he was transferred to the Maricopa County Hospital for a psychological evaluation in July 2009 and that the hospital staff submitted a report to Defendant Arpaio documenting "[Plaintiff's] abuse and lack of medical care."  Plaintiff contends that, as a result of the report, Defendant Drapeau was sanctioned and transferred.  Plaintiff further asserts that since his transfer to the Arizona Department of Corrections, medical professionals have verified that Plaintiff sustained irreversible physical injuries "as [a] result of inadequate or refusal of medical health services by or from Maricopa County employees, staff, and correctional officers."

In Count Three, Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment.  He claims that from October 2006 until August 20, 2009, he was kept in complete isolation "under the guise of mental health evaluation under the direct and complete supervision of Defendant Drapeau."  Plaintiff contends that he was subjected to psychological, physical, and verbal abuse, including being

housed in an empty cell without clothing or bedding for months, placed in a four-point restraint for extended periods, verbally abused because of his nationality, denied basic necessities and health services, and assaulted.

In his Request for Relief, Plaintiff seeks psychological and physical testing and treatment, long-term medical care, monetary damages, injunctive relief, and his costs of suit.

**IV.    Discussion of First Amended Complaint**

**A.    Counts One and Three**

Liberally construed, Plaintiff has stated an excessive force claim in Count One against Defendants Drapeau, Bush, Rain, Roger, and Humis, and a deliberate indifference claim in Count Three against Defendant Drapeau. The Court will require Defendants Drapeau, Bush, Rain, Roger, and Humis to answer Counts One and Three.

**B.    Count Two**

Although *pro se* pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Id.

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. Conclusory allegations that a Defendant or group of Defendants have violated a constitutional right are not acceptable.

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429

1   U.S. 97, 104 (1976)).   A plaintiff must show (1) a "serious medical need" by demonstrating

2   that failure to treat the condition could result in further significant injury or the unnecessary

3   and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.

4   Jett, 439 F.3d at 1096 (quotations omitted).

5   "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,

6   1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know

7   of and disregard an excessive risk to inmate health; "the official must both be aware of facts

8   from which the inference could be drawn that a substantial risk of serious harm exists, and

9   he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Deliberate

10  indifference in the medical context may be shown by a purposeful act or failure to respond

11  to a prisoner's pain or possible medical need and harm caused by the indifference.  Jett, 439

12  F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally

13  denies, delays, or interferes with medical treatment or by the way prison doctors respond to

14  the prisoner's medical needs.  Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

15  Deliberate indifference is a higher standard than negligence or lack of ordinary due

16  care for the prisoner's safety.  Farmer, 511 U.S. at 835.  "Neither negligence nor gross

17  negligence will constitute deliberate indifference." Clement v. California Dep't of

18  Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter

19  Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or

20  "medical malpractice" do not support a claim under § 1983).   "A difference of opinion does

21  not amount to deliberate indifference to [a plaintiff's] serious medical needs."  Sanchez v.

22  Vild, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is

23  insufficient to state a claim against prison officials for deliberate indifference.  See Shapley

24  v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference

25  must be substantial.  The action must rise to a level of "unnecessary and wanton infliction

26  of pain."  Estelle, 429 U.S. at 105.

27  Plaintiff's allegations in Count Two are simply vague and conclusory allegations

28  against a group of Defendants.  Plaintiff has failed to allege what any particular Defendant

did or failed to do, when that action or inaction occurred, and what specific injury Plaintiff suffered as a result.  Plaintiff has failed to state a claim of deliberate indifference in Count Two and, therefore, the Court will dismiss without prejudice Count Two.

In addition, to the extent Plaintiff is attempting to raise a claim under the ADA regarding his medical care, he has failed to do so.  See Carrion v. Wilkinson, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004) ("The ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities." (quoting Galvin v. Cook, 2000 WL 1520231, at *6 (D. Or. 2000))).

## C.     Defendant Arpaio

In his First Amended Complaint, Plaintiff claims that Defendant Arpaio is responsible for oversight at the Maricopa County Jails, determines policies for the treatment of pretrial detainees, and determines policies and procedures for training Maricopa County correctional officers.

There is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.  Monell v. New York City Department of Social Services, 436 U.S. 658, 691-92 (1978); Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir. 1992); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Moreover, Plaintiff's allegations regarding Defendant Arpaio's policies are too vague to state a claim; he does not identify any specific policy Defendant Arpaio created and does not allege that Plaintiff's injuries were the result of those policies.  Thus, the Court will dismiss without prejudice Defendant Arpaio.

## V.     Warnings

### A.     Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

**B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.    Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.    Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Count Two is **dismissed** without prejudice.

(2)    Defendants Arpaio, Chris, Oddly, Straight, and Spiritu are **dismissed** without prejudice.

(3)    Defendants Drapeau, Bush, Rain, Roger, and Humis must answer Counts One and Three.

(4)    The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 19), this Order, and both summons and request for waiver forms for Defendants Drapeau, Bush, Rain, Roger, and Humis.

(5)    Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(7)     The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(8)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a)     personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

1        (9)    **A Defendant who agrees to waive service of the Summons and First**

2    **Amended Complaint must return the signed waiver forms to the United States Marshal,**

3    **not the Plaintiff.**

4        (10)    Defendants must answer the First Amended Complaint or otherwise respond

5    by appropriate motion within the time provided by the applicable provisions of Rule 12(a)

6    of the Federal Rules of Civil Procedure.

7        (11)    Any answer or response must state the specific Defendant by name on whose

8    behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

9    does not identify the specific Defendant by name on whose behalf it is filed.

10        (12)    This matter is referred to Magistrate Judge Mark E. Aspey pursuant to Rules

11    72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized

12    under 28 U.S.C. § 636(b)(1).

13        DATED this 18th day of April, 2012.

14

15

16                             *David G. Campbell*

17                             _____
                         David G. Campbell
                         United States District Judge

18

19

20

21

22

23

24

25

26

27

28